## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DENA K. BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 06-2212-KHV** |
| **ROBERT M. DAY, in his official** | ) | |
| **capacity as Director, Kansas Division** | ) | |
| **of Health Policy and Finance,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

On May 25, 2006, plaintiff filed suit under 42 U.S.C. § 1983 alleging that the State of

Kansas disqualified her from Medicaid benefits in violation of federal law.  On October 27, 2006,

in reliance on the Younger abstention doctrine, the Court dismissed plaintiff's action.  See Younger

v. Harris, 401 U.S. 37 (1971);  Memorandum And Order (Doc. #27).  The Court determined that

(1) a state administrative proceeding involving this matter was pending when plaintiff initiated her

federal action; (2) the state proceedings afforded plaintiff an adequate forum in which to raise her

federal claims; (3) the state proceedings implicated important state interests; and (4) plaintiff could

show no exceptional circumstances which suggested that abstention was improper.  See id.  This

matter comes before the Court on Plaintiff's Motion To Alter Or Amend Judgment (Doc. #31) filed

November 9, 2006.  Plaintiff argues that in dismissing her claim, the Court clearly misapprehended

applicable law.

**Factual Background**

The material facts are undisputed and may be summarized as follows:

Plaintiff is a developmentally disabled adult who resides at a private not-for-profit residential care facility.  Absent medical assistance, she would be responsible for approximately $5,000 a month for services which she receives there.

Robert M. Day is director of the Kansas Division of Health Policy and Finance ("HPF").  Day is responsible for administering state medical assistance programs, including Medicaid.

Plaintiff's mother died in 2003, and plaintiff became a beneficiary of a residuary trust which gave the trustee discretion to distribute income and/or principal for plaintiff's health, education, support and maintenance.  In August of 2005, HPF notified plaintiff that effective August 31, 2005, she was ineligible for medical assistance because her interest in the trust counted as an available resource under applicable law.  Plaintiff timely requested an administrative hearing, at which time the hearing officer reversed the decision to terminate benefits.  On April 26, 2006, HPF reversed the hearing officer decision and reinstated the termination of benefits.  See Final Order, Exhibit 10 attached to Plaintiff's Response In Opposition To Motion To Dismiss (Doc. #16) filed July 6, 2006.  In a letter to plaintiff dated April 28, 2006, HPF indicated that the termination would become effective May 31, 2006.  See Exhibit A attached to Complaint (Doc. #1) filed May 25, 2006.

On May 25, 2006, plaintiff filed suit against Day in his official capacity as director of HPF.  Plaintiff brings suit under 42 U.S.C. § 1983, alleging that HPF's decision to count the assets of her mother's trust as an available resource violates federal Medicaid law.  Plaintiff seeks injunctive and declaratory relief.

2

## Discussion

Rule 59(e), Fed. R. Civ. P., permits plaintiff's motion to alter or amend the Court's judgment. Only limited grounds support a Rule 59(e) motion.  See Adams v. Reliance Standard Life Ins. Co., 225 F.3d 1179, 1186 n.5 (10th Cir. 2000) (Rule 59(e) motions "should be granted only to correct manifest errors of law or to present newly discovered evidence"); Brumark Corp. v. Samson Res. Corp., 57 F.3d 941, 948 (10th Cir. 1995) (reconsideration requires intervening change in controlling law, new evidence or need to correct clear error or prevent manifest injustice).

Plaintiff argues that in abstaining under Younger, the Court clearly misapprehended applicable law.  Specifically, plaintiff argues that (1) the Court applied an exhaustion requirement in violation of Supreme Court precedent which holds that plaintiff need not exhaust state remedies before bringing a Section 1983 claim in federal court, and (2) Younger does not apply because plaintiff's federal action does not attempt to interfere with the validity of the state administrative process.

## I.     Exhaustion Of State Remedies

This case neatly presents the question whether plaintiff may sue in federal court under Section 1983 without first exhausting opportunities for judicial review of an administrative proceeding which she initiated under state law.  This question highlights the tension between the rule that plaintiff is generally not required to exhaust state remedies before bringing a Section 1983 claim in federal court, see Monroe v. Pape, 365 U.S. 167, 183 (1961); Patsy v. Board of Regents of the State of Florida, 457 U.S. 496, 516 (1982), and the rule that federal courts generally may not interfere with ongoing state proceedings, see Younger, 401 U.S. at 53.

3

A.     **Non-Exhaustion Rule Under Section 1983**

It is well established that federal court plaintiffs need not first pursue remedies available in state court before filing suit under Section 1983 in federal court.  In <u>Monroe v. Pape</u>, the United States Supreme Court held that Section 1983 is "supplementary to the state remedy" and that available state remedies "need not be first sought and refused before the federal [remedy] is invoked."  365 U.S. at 183.  The Supreme Court reaffirmed the general rule of non-exhaustion in <u>Patsy v. Board of Regents</u>, where plaintiff filed suit under Section 1983 alleging discriminatory denial of promotion by a state university.  457 U.S. at 498.  Plaintiff had not pursued available administrative remedies within the university system, <u>see</u> <u>Patsy v. Fla. Int'l Univ.</u>, 634 F.2d 900, 913 (5th Cir. 1981), and the Fifth Circuit remanded after finding that plaintiff was required to exhaust adequate and appropriate state administrative remedies, 457 U.S. at 498.  The Supreme Court reversed, holding that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."  <u>Id.</u> at 516.

<u>Monroe</u> and <u>Patsy</u> make clear that a plaintiff who brings suit in federal court under Section 1983 is not barred by failure to have pursued and exhausted state remedies.  This rule does not dispose of the issue in this case, however, because unlike plaintiffs in <u>Monroe</u> and <u>Patsy</u>, plaintiff here did not *first* bring suit in federal court: she initiated a state administrative proceeding before HPF and, during its pendency, sought recourse to federal court.  Plaintiff's initiation of a state administrative proceeding before filing suit in federal court makes it necessary to also consider <u>Younger</u> abstention.

B.     **The <u>Younger</u> Doctrine**

Under <u>Younger</u>, a federal district court must abstain from hearing a federal case which

4

interferes with certain state proceedings.  In <u>Younger</u>, a state criminal defendant filed suit in federal court, seeking to enjoin the state criminal prosecution.  401 U.S. at 38-39.  After discussing a long line of authority counseling against federal interference in state court matters, <u>Id.</u> at 43-49, the Supreme Court found no justification for "prohibiting the State from carrying out the important and necessary task of enforcing [its] laws against socially harmful conduct that the State believes in good faith to be punishable under its laws and the Constitution."  <u>Id.</u> at 51-52

Though the primary application of <u>Younger</u> involves state criminal proceedings, the doctrine has been extended to ongoing state civil and administrative proceedings as well.  <u>See</u> <u>Amanatullah v. Colo. Bd. of Med. Exam'rs</u>, 187 F.3d 1160, 1163 (10th Cir. 1999).  Today, <u>Younger</u> dictates that a federal district court abstain from exercising jurisdiction when (1) a state criminal, civil or administrative proceeding is pending; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.  <u>Id.</u>  Absent extraordinary circumstances, abstention is mandatory when these elements are satisfied.  <u>Id.</u>

For purposes of the first <u>Younger</u> element, a proceeding is "pending" if – as of the filing of the federal complaint – not all state appellate remedies have been exhausted.  <u>Mounkes v. Conklin</u>, 922 F. Supp. 1501, 1511 (D. Kan. 1996); <u>see also</u> <u>Stein v. Legal Adver. Comm. of the Disciplinary Bd.</u>, 122 Fed. Appx. 954, 957 (10th Cir. 2004) (exhaustion rule clear and sensible approach to <u>Younger</u>).  Obviously, where Section 1983 actions are concerned, the <u>Younger</u> exhaustion requirement conflicts with the general non-exhaustion rule of <u>Monroe</u> and <u>Patsy</u>.  The Supreme Court has addressed this conflict on two occasions.

In <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592 (1975), which involved a civil nuisance proceeding against the operator of a movie theater, government officials obtained a judgment in state court which ordered that the theater be closed and the personal property used in the theater operation be seized and sold.  <u>Id.</u> at 598.  The operator of the movie theater did not appeal the judgment within the state judicial system, but filed suit in federal court under Section 1983 alleging that enforcement of the state nuisance statute denied him constitutional rights.  <u>Id.</u>  Questioning whether the state nuisance proceeding was ongoing for purposes of <u>Younger</u>, the Supreme Court held that a state proceeding remains pending so long as "a losing litigant has not exhausted his state appellate remedies."  <u>Id.</u> at 609-10.  In <u>Huffman</u>, plaintiff had state appellate remedies available when it filed suit in federal court.  Accordingly, the Supreme Court held that the state proceeding was ongoing for purposes of <u>Younger</u>.  <u>Id.</u>  Under <u>Huffman</u>, the federal plaintiff must fully pursue appellate remedies associated with the state proceeding before filing suit in federal court under Section 1983; failure to exhaust such remedies means that the state proceeding remains ongoing for purposes of <u>Younger</u>.[1]  <u>See id.</u> at 608 (necessary concomitant of <u>Younger</u> is that federal plaintiff must exhaust state appellate remedies before seeking relief in federal court).  The Supreme Court reconciled its holding with the non-exhaustion rule of <u>Monroe</u>, stating as follows:

> By requiring exhaustion of state appellate remedies for the purposes of applying <u>Younger</u> we in no way undermine <u>Monroe v. Pape</u>.  There we held that one seeking redress under [Section] 1983 for a deprivation of federal rights need not first initiate state proceedings based on related state causes of action.  <u>Monroe v. Pape</u> had nothing to do with the problem presently before us, that of the deference to be accorded state proceedings which have already been initiated and which afford a

_____

[1]    <u>Huffman</u>'s exhaustion rule is strictly applied and an aggrieved party cannot simply wait for expiration of the time to appeal in state court and then file suit in federal court.  As <u>Huffman</u> noted, a federal court plaintiff "may not avoid the standards of <u>Younger</u> by simply failing to comply with the procedures of perfecting its appeal within the [state] judicial system."  420 U.S. at 611 n.22.

competent tribunal for the resolution of federal issues.

Id. at 609 n.21.

In Ohio Civil Rights Commission v. Dayton Christian Schools, Inc., 477 U.S. 619 (1986), the Ohio Civil Rights Commission ("OCRC") initiated a state administrative proceeding against Dayton Christian Schools ("Dayton") alleging that Dayton had terminated an employee in violation of state anti-discrimination law.  Id. at 624.   While the administrative proceeding was pending, Dayton filed suit against OCRC in federal court under Section 1983, claiming that its actions violated the religion clauses of the First Amendment.  Id. at 624-25.   The Supreme Court held that Younger required abstention because the administrative proceeding was judicial in nature, provided an adequate forum in which to raise constitutional claims and implicated important state interests. Id. at 628-29.   Explaining its holding in relation to the general non-exhaustion rule regarding Section 1983 claims, the Supreme Court noted as follows:

> The application of the Younger principle to pending state administrative proceedings is fully consistent with Patsy v. Florida Board of Regents, which holds that litigants need not exhaust their administrative remedies prior to bringing a § 1983 suit in federal court.  Unlike Patsy, the administrative proceedings here are coercive rather than remedial, began before any substantial advancement in the federal action took place, and involve an important state interest.

Id. at 627 n.2.

Subsequent lower court decisions have interpreted Dayton as creating a controlling distinction between remedial and coercive administrative actions for purposes of Younger. Generally, these cases hold that a federal court must abstain from exercising jurisdiction over an action under Section 1983 when plaintiff has failed to exhaust remedies in state administrative proceedings which are coercive in nature.  See, e.g., Moore v. City of Asheville, 396 F.3d 385, 394 (4th Cir. 2005) (Younger bars federal intervention into coercive state proceedings);

Maymo-Melendez v. Alvarez-Ramirez 364 F.3d 27, 31 (1st Cir. 2004) (<u>Younger</u> extended to coercive civil cases and state administrative proceedings); <u>Majors v. Engelbrecht</u>, 149 F.3d 709, 712 (7th Cir. 1998) (<u>Younger</u> applies to coercive, as opposed to remedial or legislative administrative actions); <u>Planned Parenthood of Greater Iowa, Inc. v. Atchison</u>, 126 F.3d 1042, 1047 (8th Cir. 1997) (<u>Younger</u> exhaustion appropriate in Section 1983 action where state administrative action coercive); <u>O'Neill v. City of Philadelphia</u>, 32 F.3d 785, 791 n.13 (3d Cir. 1994) (remedial or coercive nature of administrative action is "critical distinction"). Conversely, abstention is not required when the ongoing state administrative proceedings are remedial. The Court therefore addresses whether plaintiff's state administrative proceeding was coercive or remedial in nature.

### C.      The Coercive/Remedial Distinction

Plaintiff argues that her state administrative proceeding was remedial, and that abstention is therefore inappropriate, because she initiated the proceeding to remedy defendant's wrongful and illegal action. Some courts suggest that the distinction between remedial and coercive proceedings is a procedural one which depends on which party initiated the administrative proceeding. See <u>Kercado-Melendez v. Aponte-Roque</u>, 829 F.2d 255, 260 (1st Cir. 1987) (remedial proceeding is one which can be triggered only by federal court plaintiff); <u>Cooper v. Bombela</u>, 34 F. Supp.2d 693, 696 n.6 (N.D. Ill. 1999) (relationship where federal plaintiff is state defendant is virtual requirement of <u>Younger</u> abstention). Other courts have recognized that administrative proceedings may be coercive even when a private individual initiates them against the state. In <u>Moore v. City of Asheville</u>, the city cited and fined plaintiff for violating a city noise ordinance. 396 F.3d at 389. Plaintiff appealed to an administrative body, which affirmed the sanction. <u>Id.</u> Plaintiff then proceeded to federal court, challenging the noise ordinance under Section 1983. <u>Id.</u> In addressing

8

the remedial/coercive distinction, the Fourth Circuit noted that the administrative proceedings "were unquestionably coercive." Id. at 395 n.4.  In O'Neill v. City of Philadelphia, plaintiffs challenged municipal parking tickets by initiating administrative hearings before a city Bureau of Administrative Adjudication.  32 F.3d at 788.  The hearing examiner overruled the challenge, and plaintiffs filed suit in federal court under Section 1983.  Id.  The district court rejected defendant's argument that it should abstain from exercising jurisdiction under Younger.  Id. at 786.  The Third Circuit reversed, holding that Younger applied in part because "the action taken by the City . . . to enforce its traffic tickets against [plaintiffs] was coercive action." Id. at 791 n.13.  These cases clearly indicate that state administrative proceedings, though technically initiated by federal court plaintiffs, may nevertheless be coercive for purposes of Younger if they are initiated in response to state enforcement efforts.  See also Executive Art Studio, Inc. v. City of Grand Rapids, 179 F. Supp.2d 755, 759 (W.D. Mich. 2001) (federal plaintiff's status as plaintiff or defendant in state proceeding not necessarily determinative whether Younger abstention appropriate).

The Tenth Circuit has not squarely addressed this issue.  In Meacham v. Betit, 97 F.3d 1465 (Table), No. 95-586-W, 1996 WL 532230, at *1 (10th Cir. Sept. 19, 1996), plaintiff appealed the dismissal of his Section 1983 action under Younger on the basis of an ongoing state administrative proceeding, and argued that abstention was not proper because the state proceeding was remedial.[2] In response, the Tenth Circuit declined to distinguish remedial and coercive administrative proceedings based solely on who initiated them.  It noted that "[a]ppellant sought a hearing, yes, but this request was in response to an action already taken by the State." Id.  Though unpublished

---

[2]      The Tenth Circuit order and judgment does not reveal the substance of plaintiff's state or federal actions.

and factually inspecific, <u>Meacham</u> suggests that a plaintiff who initiates an administrative hearing at the state level does not automatically invoke a remedial proceeding which is sufficient to avoid <u>Younger</u>. The Court agrees that this approach is the wiser approach, and in deciding whether a state administrative proceeding is coercive or remedial looks to the substance and nature of the state administrative proceeding.

In considering the substance of the administrative proceeding, <u>O'Neill</u> is instructive. It defines coercive administrative proceedings as those which enforce violations of state law and remedial administrative proceedings as those brought "to vindicate a wrong which ha[s] been inflicted by the State." 32 F.3d at 791 n.13; <u>accord</u> <u>Alleghany Corp. v. Haase</u>, 896 F.2d 1046, 1053 (7th Cir. 1990), <u>vacated as moot by</u> <u>Dillion v. Alleghany Corp.</u>, 499 U.S. 933, 933 (1991) (<u>Younger</u> confined to cases where federal plaintiff violated state law, thereby exposing himself to state enforcement proceeding); <u>Telco Commc'ns, Inc. v. Carbaugh</u>, 885 F.2d 1225, 1240 (4th Cir. 1989) (state enforcement efforts coercive); <u>Lancaster v. Spartanburg County Bldg. Codes Dep't</u>, 370 F. Supp.2d 404, 407 (D.S.C. 2005) (local government enforcement of county ordinance coercive); <u>Executive Art Studio</u>, 179 F. Supp.2d at 759 (proper inquiry in applying <u>Younger</u> is whether state proceedings arise out of state enforcement efforts).

Here, defendant claimed that plaintiff was violating state law by collecting Medicaid benefits for which she was ineligible. Effective August 31, 2005, it notified plaintiff that it was therefore terminating those benefits. Plaintiff requested a hearing before the fair hearing officer to appeal the termination. At first blush, it might appear that the administrative proceeding was remedial because it sought to "remedy" the allegedly wrongful decision to terminate benefits. This conclusion has superficial appeal, but it ignores the coercive nature of the state action which triggered plaintiff's

10

right to request an administrative hearing.  Under Kansas law, the termination of benefits to ineligible recipients is an enforcement mechanism designed to address violations of state Medicaid law.  As noted in Miller v. Department of Social & Rehabilitation Services, 275 Kan. 349, 354, 64 P.3d 395, 399 (2003), Kansas "has joined the federal government and other states in guarding against providing healthcare for individuals who have their own resources."  To that end, the State of Kansas "has been especially watchful for applicants' financial planning techniques which it believes violate the purpose of the Medicaid laws and the accompanying Kansas statutes and regulations," and "has been particularly vigilant regarding trusts."  Id.

The Court finds that the state administrative proceeding in this case, like the state administrative proceedings to enforce city noise ordinances and municipal parking tickets in Moore and O'Neill, was coercive for purposes of Younger because plaintiff initiated her administrative hearing as part of the state's overall law enforcement scheme.  See Moore, 396 F.3d at 395 n.4 (issuance of citation and fine triggers violator's right to administrative hearing, which becomes coercive proceeding once initiated); O'Neill, 32 F.3d at 791 n.13 (issuance of parking ticket is coercive action to enforce state law, triggering violator's right to request administrative hearing which is coercive in nature).  The Court concedes that this is a difficult question, and that without binding Tenth Circuit precedent, reasonable minds could disagree with this conclusion. The Court's decision, however, attempts to strike the proper balance between Monroe and Patsy, which hold that Section 1983 claims in federal court are generally not barred by plaintiff's failure to exhaust available state remedies, and Younger, which counsels against federal interference in state law

11

enforcement efforts.[3]

Here, because the state administrative proceeding was fundamentally coercive in nature, Huffman and Dayton required plaintiff to fully pursue available appellate remedies within the state judicial system before bringing her Section 1983 action in federal court.  See Moore, 396 F.3d at 388 (party to coercive state administrative proceeding must exhaust state administrative and judicial remedies under Younger and may not bypass those remedies in favor of federal court); O'Neill, 32 F.3d at 790-91 (grounds in Huffman requiring exhaustion of state appellate review apply with respect to state-court judicial review of state administrative determination); Alleghany Corp. v. McCartney, 896 F.2d 1138, 1143-44 (8th Cir. 1990) (exhaustion requirement applies to continuing and final administrative proceedings).  Because the trial and appellate phases of the state judicial system are treated as a single entity under Younger, plaintiff's state administrative proceeding remained pending when she filed her federal action.   See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 369 (1989) ("For Younger purposes, the State's trial-and-appeals process is treated as a unitary system."); Huffman, 420 U.S. at 609 (state proceeding remains pending under Younger so long as "a losing litigant has not exhausted his state appellate remedies"); O'Neill, 32 F.3d at 790-91 (state proceeding remains pending under Younger where federal court

---

[3]     Plaintiff suggests that under the Court's interpretation of the remedial/coercive distinction, all administrative proceedings involving potential Section 1983 claims would be characterized as coercive and forced into state court, contrary to the non-exhaustion principle of Monroe and Patsy, because those proceedings would necessarily involve state action under color of law.  See 42 U.S.C. § 1983 (actors under color of state law liable for violations of federal law).

This argument is without merit.  Plaintiff's suggestion that the Court's decision would dissolve the remedial/coercive distinction could only be true in a world where all action under color of state law constitutes enforcement of state law.  Under the Court's interpretation of the remedial/coercive distinction, however, cases like Patsy still are considered remedial because the state action at issue (e.g. denial of a promotion) could not be deemed enforcement of state law.

plaintiff chooses not to pursue state court judicial remedies, but instead seeks to challenge state judgment through federal action).  Plaintiff should have appealed HPF's final decision within the state judicial system, as provided under Kansas law, see K.S.A. § 77-613(b), and her argument that she is not generally required to exhaust state remedies before bringing a Section 1983 in federal court does not entitle her to relief under Rule 59(e).[4]

## II.      Interference With State Administrative Proceedings

Plaintiff briefly argues that Younger does not apply because her federal action did not attempt to interfere with the validity of the state administrative process.  The Court disagrees. Addressing the same concerns presented in this case, O'Neill noted that

> [F]ederal intervention before a state court has had the opportunity to review an agency's decision is no less an "aspersion on the capabilities and good-faith of state appellate courts," and no "less a disruption of the State's efforts to protect interests that it deems important," than the federal intervention with the state judicial appellate process explicitly condemned in Huffman. . . . [F]ederal intervention which would annul the results of an agency determination would deprive "the States of a function which quite legitimately is left to them," i.e. the disposition of constitutional issues which arise in litigation over which they have jurisdiction.

32 F.3d at 791 (quoting Huffman, 420 U.S. at 608-09) (internal citations omitted).

Here, plaintiff claims that state Medicaid law is contrary to federal Medicaid law, and she sought declaratory and injunctive relief to prevent the State from counting her trust as an available resource under Kansas law.  Because such relief stands in direct opposition to the State's enforcement of its Medicaid law and HPF's decision upholding the State's action, plaintiff's federal

---

[4]      Plaintiff argues that the Court's holding will deprive Medicaid recipients of their right to challenge agency determinations in federal court under Section 1983.  The Court notes that Medicaid recipients whose benefits have been terminated may avoid this outcome either by exhausting state remedies before bringing Section 1983 claims to federal court or bringing such claims straight to federal court before initiating state administrative proceedings.

action sought to effectively annul state enforcement efforts, which <u>Younger</u> prohibits.  <u>See</u> <u>J.B. ex</u>
<u>rel. Hart v. Valdez</u>, 186 F.3d 1280, 1294 (10th Cir. 1999) (federal challenges to law applied in state
administrative proceeding constitutes interference prohibited by <u>Younger</u>); <u>Moore</u>, 396 F.3d at 397
(federal complaint which looks back at past actions considered by administrative body and demands
relief for those actions seeks to annul administrative decision); <u>O'Neill</u>, 32 F.3d at 791
(<u>Younger</u> prohibits federal action which seeks to invalidate State's administrative judgment).  The
Court therefore rejects plaintiff's argument that when she filed suit, she was not attempting to
interfere with a state administrative proceeding.

**IT IS THEREFORE ORDERED** that <u>Plaintiff's Motion To Alter Or Amend Judgment</u>
(Doc. #31) filed November 9, 2006 be and hereby is **OVERRULED**.

Dated this 28th day of February, 2007 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

14